GRAND LODGE, ANCIENT ORDER UNITED WORKMEN, OF NE-
BRASKA, APPELLANT, V. GRAND LODGE, ANCIENT ORDER
UNITED WORKMEN, OF IOWA, ET AL., APPELLEES.

FILED APRIL 11, 1921.   No. 21305.

Insurance: USE OF NAME: INJUNCTION. The "Grand Lodge of the
Ancient Order of United Workmen of the State of Iowa" may be
enjoined from transacting a fraternal insurance business in Ne-
braska in that name, though licensed by the state insurance board
of Nebraska to do so, where such use of its name, its methods and
its conduct will have a tendency to mislead the public in dealing
with the "Grand Lodge of the Ancient Order of United Workmen
of the State of Nebraska" and result in injury to the latter, a
fraternal beneficiary association previously organized under the
laws of Nebraska and transacting a fraternal insurance business
therein in that name.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE.   Reversed.

Edward F. Leary, John Stevens, E. J. Lambe and Nel-
son C. Pratt, for appellant.

Byron G. Burbank, Saunders & Stewart, Gray & Brum-
baugh and E. B. Evans, contra.

ROSE, J.

This is a suit in equity to enjoin defendants from trans-
acting in Nebraska the insurance business of a fraternal
beneficiary association under a name similar to plaintiff's.
The district court denied the injunction. Plaintiff has
appealed.

The name of plaintiff is the "Grand Lodge of the An-
cient Order of United Workmen of the State of Nebraska."
It is a fraternal beneficiary association. It has a lodge
system, composed of a grand lodge and subordinate lodges,
with ritualistic work and a representative form of govern-
ment. Its operations are confined to Nebraska. It was
organized under the laws of Nebraska, and since 1886 has
been regularly licensed for statutory periods by the in-

surance board of the state. It has been in continuous operation with many subordinate lodges and a large membership. In law it owes no allegiance or pecuniary obligation to any parent. society. Its assessments were originally too low to fully meet its maturing insurance obligations. It raised its rates to conform to the rates adopted by the "Fraternal Congress." Dissatisfaction with the increase arose in its membership. The new rates were sustained. *Funk v. Stevens,* 102 Neb. 681. Plaintiff makes and collects assessments and its financial condition has improved. The report of a special examination indicated to the state insurance board a favorable possibility of rehabilitation. *Grand Lodge, A. O. U. W., v. Insurance Board,* 103 Neb. 99. Plaintiff has not become insolvent in the sense that a mere nonresident rival with a similar name can ignore its existence, appropriate its name, invade its territory, and use its organization, data and records. It has the right to sue in its own name for any equitable relief to which it is entitled. On the record presented these propositions are too plain for justifiable controversy.

The name of the defendant association is the "Grand Lodge of the Ancient Order of United Workmen of the State of Iowa." Its name would be the same as plaintiff's, if the geographical feature were eliminated. It was organized under the laws of Iowa. It is transacting a fraternal insurance business identical with that of plaintiff. It is operating in the field formerly occupied by plaintiff without a rival in similarity of name. Its system is the same—grand and subordinate lodges with ritualistic work and a representative form of government. It applied to the state insurance board of Nebraska for a license for the year 1918. Its application was rejected for the following reason:

"Because of the similarity in names of the A. O. U. W. of Nebraska and the A. O. U. W. of Iowa, the admission of the latter order to this state would cause confusion in the minds of many present and prospective members, and

thus still further retard the efforts of the Nebraska order to fulfil its obligations to its members." *Grand Lodge, A. O. U. W., v. Insurance Board,* 103 Neb. 99.

Upon an appeal, which finally reached the supreme court, it was held that the state insurance board of Nebraska was without power to deny a license to the defendant association on account of similarity of names, a controversy of that nature being considered one of exclusive judicial cognizance. In this ruling, however, the writer hereof did not concur. *Grand Lodge, A. O. U. W., v. Insurance Board,* 103 Neb. 99, 104. As a result of the decision mentioned, the defendant association procured from the insurance board of Nebraska a license to transact in this state a fraternal insurance business in 1919 in competition with plaintiff.

The use of a similar name and the conduct of defendants in transacting a like business in Nebraska and in successfully negotiating for the transfer of members, insurance and subordinate lodges of plaintiff to the defendant association are urged as grounds for an injunction.

The granting of equitable relief to plaintiff is resisted on the grounds, among others, that there is no similarity of names to mislead any one or to injure plaintiff; that defendants have committed no fraud; that the action of plaintiff's members and lodges in uniting with the defendant association was voluntary and unsolicited and was taken for the purpose of procuring insurance from a solvent insurer; that members of the defendant association were accepted only on individual applications; that all of the acts of the defendant association were authorized by law and were performed in good faith without injury to plaintiff.

Is plaintiff entitled to an injunction? A number of subordinate lodges chartered and established by plaintiff in Omaha and Fremont surrendered their charters to plaintiff, and under their original names became subordinate lodges of the defendant association with prac-

tically the same membership. In some of these lodges of plaintiff not a member was left. From this source the defendant association procured about 1,800 of plaintiff's members from the subordinate lodges in Omaha and Fremont. The negotiations leading to the transfer of insurance, members and lodges were conducted in the following manner: Each of plaintiff's seceding lodges appointed a committee of two members to act with a like committee of the others. These appointees acted as a joint committee, representing subordinate lodges and members of plaintiff in dealing with each other and in negotiating with the defendant association. Among other things the joint committee resolved that it was the duty of plaintiff's respective lodges "to take such action as shall perpetuate the order and the name 'A. O. U. W.'" They solicited from the defendant association "a proposition for taking over, adopting and accepting lodges and members of lodges within the state of Nebraska." The proposition made and accepted required each lodge of plaintiff to forward to the home office of the defendant association at Des Moines, Iowa, a copy of a resolution accepting the terms offered, together with a list of members showing the age of each and the amount of his insurance. No physical examination was required and there was no mention of moral character, vocation, business, or profession. In these respects good standing in the subordinate lodge of plaintiff was the test. While each member was required to make an individual application promising to comply with the charter and the by-laws of the defendant association, the effect of the proposition and of the acceptance thereof was to transfer plaintiff's seceding lodges in a body to the defendant association. The proposition itself, upon a resolution accepting its terms, declares:

"The Grand Lodge of Iowa will issue its charter to said lodge and adopt it as one of its subordinate lodges under the same name as heretofore borne by said lodge, or such other name as shall be designated in said resolution."

The subordinate lodges that seceded from plaintiff were built up by years of fraternal activity, enterprise and expense under a charter from plaintiff. They used plaintiff's by-laws and ritual. Under their charter they had the support and the prestige of the grand lodge. Their fraternal insurance was the mutual obligation of all beneficial members in hundreds of other subordinate lodges throughout the state. The members, when originally accepted by plaintiff, were selected and scrutinized according to ethical standards established by plaintiff for the benefit of the membership as a whole. They were not found in groups with the applicants for membership already named, listed, classified and qualified. The insurance risks of the members of the lodges that renounced their obligations to plaintiff and to their fraternal brethren in all subordinate lodges were examined and approved by a medical expert employed by plaintiff for the protection and the benefit of all subordinate lodges and members. The lists containing the name, age and insurance risk of each member of a seceding subordinate lodge represent fraternal enterprise, funds and assets, not only of the supreme lodge, but of all existing subordinate lodges and members. This harvest of fraternity is not subject to the whim or the caprice of any subordinate lodge. It was not created for that purpose. It is a mutual and fraternal asset of plaintiff and of all lodges and members. It is not a subject of barter by any individual lodge or the members thereof without regard to the rights or the wishes of the supreme lodge and the membership as a whole. It was never intended for a rival. It belongs to the fraternal entity. The seceding lodges and their officers and committees misused plaintiff's organization, records and data, abused their trust, and violated their mutual and fraternal obligations to their supreme lodge and to other subordinate lodges and members to the injury of plaintiff. The defendant association, in ignoring plaintiff and its rights, in negotiating independently with plaintiff's subordinate lodges, in exacting from subordi-

nate lodges plaintiff's organization, records and data, and in appropriating under a similar name the fruits of plaintiff's fraternal enterprise, participated actively in the wrongs committed by plaintiff's seceding lodges, officers and committees, and thus injured plaintiff. The wrongful transactions and the results thereof, in connection with the use of a similar name, will have a tendency to confuse or mislead the public in dealing with plaintiff and its subordinate lodges. The methods employed by defendants in participating in the destruction of plaintiff's organizations and subordinate lodges in Omaha and Fremont, and the conduct of the defendant association in accepting the benefits of the wrong-doing without consulting or compensating plaintiff, were unfair. They were unworthy of a fraternal rival and cannot be sanctioned by a court of equity.

Defendants should be enjoined from soliciting or accepting in Nebraska, in the name of the Grand Lodge of the Ancient Order of the United Workmen of the State of Iowa, new members, but the injunction should not disturb existing insurance contracts or interfere with subordinate lodges as their membership now stands. For this purpose the judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, J., not sitting.